```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
INCWEBS, INC.,

        Plaintiff,
v.                                  Case No. 8:15-cv-1661-T-33TGW

FIRST STUDENT, INC.,

        Defendant.
_____/
```

**Order**

This matter comes before the Court in consideration of Defendant First Student, Inc.'s Motion to Dismiss Count V of Incwebs' Amended Complaint (Doc. # 22), filed October 5, 2015. Plaintiff Incwebs, Inc. filed a response in opposition to the Motion (Doc. # 23) on November 9, 2015. For the reasons that follow, the Motion is denied.

**I.   Factual Background and Procedural History**

In 2000, Brett Bohanon developed SchoolTIRES, a Software-as-a-Service application to track and report student discipline issues for school transportation departments. (Doc. # 21 at ¶ 5).  In 2002, Bohanon formed Incwebs as a Florida Corporation, which acquired all ownership and proprietary rights to the SchoolTIRES application, and subsequently renamed it BusConduct in 2010. (Id. at ¶¶ 6-7).

After successfully marketing BusConduct to school districts around the country, Incwebs was approached by the Senior Vice President of First Student, Dean Suhre, who expressed interest in BusConduct. (Id. at ¶¶ 9-10). Bohanon met with several executives of First Student including its Chief Financial Officer, Christian Gartner, at First Student's headquarters in Cincinnati, Ohio to explore potential business opportunities. (Id. at ¶ 12). After this meeting, Gartner informed Bohanon that First Student desired to purchase Incwebs. (Id. at ¶ 14).

To explore the possibility of this purchase further, First Student and Incwebs entered into the Mutual Confidentiality & Non-Disclosure Agreement in November of 2012. (Id. at ¶ 15; Doc. # 21-1). The stated purpose of the Confidentiality Agreement was "for the purpose of permitting the parties to explore the possibility of entering into contractual arrangements upon such terms and conditions as may be acceptable to the parties (the 'Project')." (Doc. # 21 at ¶ 16). Paragraph 1 of the Confidentiality Agreement broadly defined the protected information as "any information which . . . is provided to [First Student] . . . in connection with the Project." (Id. at ¶ 17). Paragraph 2 prohibits the use of disclosed information "for any purpose other than the

2

Project." (Id. at ¶ 18). In the fall of 2012, First Student began licensing BusConduct from Incwebs. (Id. at ¶ 19).

On January 9, 2013, First Student and Incwebs entered into a Letter of Intent for the purchase of BusConduct at the price of $735,000.00. (Doc. # 21-2). The Letter of Intent also recognized the continued applicability of the Confidentiality Agreement between First Student and Incwebs. (Doc. # 21 at ¶ 21). At a March 5, 2013, due diligence meeting with First Student executives regarding the purchase of BusConduct, Bohanon disclosed confidential information, including trade secrets such as the future additions of file attachments and referral groups, which Incwebs eventually added to BusConduct in the summer of 2013. (Id. at ¶¶ 22-24, 28). Around March 21, 2013, First Student informed Incwebs that it no longer wanted to purchase BusConduct, desiring instead to continue as partners in developing BusConduct. (Id. at ¶¶ 26-27).

In February of 2015, Bohanon discovered an online video featuring First Student's CEO Scott Parker demonstrating that First Student had developed an application identical to BusConduct called FirstACTS, claiming that Parker had developed the program in May of 2013. (Id. at ¶¶ 30-31). Parker was one of the executives present at the March 5, 2013,

3

due diligence meeting. (Id. at ¶ 31). FirstACTS contains file attachments and referral groups features that were disclosed by Incwebs in March of 2013. (Id. at ¶ 32).

On May 26, 2015, Incwebs filed a complaint against First Student in the Tenth Judicial Circuit, in and for Polk County, Florida containing the following counts: breach of contract (count I); misappropriation of trade secrets and in violation of Florida's Uniform Trade Secrets Act (Count II); violation of Florida's Deceptive & Unfair Trade Practices Act (Count III); and unjust enrichment (Count IV) . (Doc. # 2). First Student removed the action to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. # 1). With leave of the Court, Incwebs then filed an Amended Complaint adding Count V for breach of implied-in-fact contract. (Doc. # 21).

At this juncture, First Student seeks dismissal of Count V of the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 22). Incwebs filed a response to First Student's Motion to Dismiss on November 9, 2015. (Doc. # 23).

**II.  Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the

4

light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990)(stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.
>
> <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555 (2007)

(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." <u>St. George v. Pinellas Cty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

5

### III. Analysis

Count V of the Amended Complaint brings a claim for breach of an implied-in-fact contract. In its Motion, First Student argues (1) the implied-in-fact doctrine does not apply to transactions that are memorialized in writing, and (2) Incwebs' implied-in-fact argument is contradicted by exhibits and documents referred to in the Amended Complaint.

First Student's primary argument in favor of dismissal raises the issue of whether Incwebs may allege an implied-in-fact contract. Under Florida law, an implied-in-fact contract "is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 385 (Fla. 4th DCA 1997). A contract implied in fact exists where the parties have made an agreement of sorts which falls short of being an enforceable, true contract. 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc., 43 So. 3d 877, 881 n.1 (Fla. 1st DCA 2010).

In fact, "[w]hen 'the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time.'" White Holding Co., LLC v. Martin Marietta Materials, Inc., 423 F.

6

App'x 943, 948 (11th Cir. 2011) (quoting Midtown Realty, Inc. v. Hussain, 712 So. 2d 1249, 1251 (Fla. 3d DCA 1998)). With implied-in-fact contracts, "the parties have in fact entered into an agreement but without 'sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. . . .'" U.S. Sur. Co. v. Edgar, 8:13-cv-1207-T-33TGW, 2014 WL 1664818, at *9 (M.D. Fla. Apr. 25, 2014)(citing Tooltrend v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir. 1999)).

First Student argues that because the Confidentiality Agreement and the Letter of Intent memorialized the parties' agreement that First Student would purchase Incwebs' business, Incwebs cannot claim an implied-in-fact contract existed. (Doc. # 22 at 3-5). However, Incwebs argues that an implied-in-fact contract exists separately from those two writings, being instead a contract to be inferred from the conduct of the parties by the fact finder. (Doc. # 23 at 2-4).

To dismiss Count V of Incwebs' Amended Complaint as a matter of law, the Court would have to find that the Confidentiality Agreement and/or the Letter of Intent memorialized an agreement that First Student would purchase Incwebs' business, including the use of Incwebs' proprietary

7

and confidential information. However, upon review of those documents, this Court cannot say that either document memorialized such an agreement.

The Confidentiality Agreement contemplated how information was to be used by First Student by prohibiting First Student from using Incwebs' proprietary and confidential information for any other purpose than "the Project." (Doc. # 21-1 at ¶ 2). "The Project" is defined as the disclosure of confidential information "for the purpose of permitting the parties to *explore the possibility* of entering into contractual arrangements upon such terms and conditions as may be acceptable to the parties." (Id. at ¶ A) (emphasis added). In addition, paragraph 8 expressly states, "[t]he disclosure of information hereunder shall not result in any obligation on the part of either party to enter into any future agreement. . . ." (Id. at ¶ 8). Thus, the Confidentiality Agreement was nothing more than a precursor to the Letter of Intent.

As the next step of the negotiation process, the parties signed a Letter of Intent. The Letter of Intent contemplated the final purchase of Incwebs' business, including its confidential and proprietary information, through a future purchase agreement. (See Doc. # 21-2 at ¶ 1). The Letter of

8

Intent included a purchase price of $735,000, and, similar to the Confidentiality Agreement, expressly stated that it is non-binding:

> **Non-Binding**
>
> 1. This Letter does *not create a binding agreement* between the Purchaser and the Sellers and *will not be enforceable*. Only the *future business purchase agreement, duly executed by the Sellers and the Purchaser, will be enforceable*. The terms and conditions of any future business purchase agreement will supersede any terms and conditions contained in this Letter. The Sellers and the Purchaser are not prevented from entering into negotiations with other third parties with regard to the subject matter of this Letter.

(Id.) (emphasis added). The Letter of Intent further acknowledges its own unenforceability by stating, "[t]his Letter will establish the basic terms to be used in a future business purchase agreement" and that "it is expected that additional terms may be added and existing terms deleted." (Id. at 1). Altogether, this language demonstrates that the negotiation process was still ongoing.

First Student argues that under the Letter of Intent "First Student contracted to compensate Incwebs only if it

9

purchased Incwebs' business" and that "Incwebs cannot recover contract damages for First Student's failure to make a payment that is not required by either of the express contracts." (Doc. # 22 at 5). However, Count V is not alleging a breach of the Letter of Intent. Rather, Incwebs is claiming that the implied-in-fact contract exists separately from the Letter of Intent and is to be inferred from the subsequent conduct of First Student. Like the Confidentiality Agreement, the Letter of Intent is not binding on the parties. Thus, an implied-in-fact contract may exist.

The documents used by First Student and Incwebs are common devices implemented on the path towards a final agreement. The documents merely contemplate the ultimate future purchase of Incwebs' business. To be sure, First Student admits in its own Motion that both documents are not binding. (Doc. # 22 at 6). Because Incwebs alleges that it entered into an agreement with First Student that lacked "sufficient clarity, [ ] a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." See U.S. Sur. Co., 2014 WL 1664818, at *9 (citing Tooltrend, 198 F.3d at 806). Thus, the Court finds that Incwebs has adequately alleged that an implied-in-fact contract may exist.

10

In addition, because the Court has determined that neither the Confidentiality Agreement nor the Letter of Intent is a memorialization of the agreement that First Student purchase Incwebs' business, the Court also rejects First Student's argument that Count V should be dismissed because these documents (attached as exhibits to the Amended Complaint) contradict the Amended Complaint. In making this argument, First Student relies on <u>Griffin Industries, Inc. v. Irvin</u>, 496 F. 3d. 1189, 1205-6 (11th Cir. 2007), which states: "when the exhibits contradict the general and conclusory allegations, the exhibits govern." Here, however, for this argument to hold weight, the Confidentiality Agreement and the Letter of Intent must have memorialized the parties' agreement that First Student would purchase Incwebs' business.

As addressed above, since the parties' agreement to the use of Incwebs' proprietary and confidential information was not memorialized in a written agreement, an implied-in-fact contract may exist. Thus, First Student's argument concerning contradictory Complaint exhibits is unavailing.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

11

Defendant First Student's Motion to Dismiss Count V of Plaintiff Incwebs' Amended Complaint (Doc. # 22) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of February, 2016.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE